## MURBACH et v INGERSOLL et
### (Two Cases)

Ohio Appeals, 9th Dist, Lorain Co.

Nos. 916 & 917.  Decided June 30, 1939.

Vandemark & Vandemark, Elyria, for appellees.

Deutsch & Dilgren, Elyria, for appellant.

McCURDY, J. (4th Dist.), sitting by designation.

## OPINION

By McCURDY, J.

Due to the fact that the same principles of law are applicable to the two cases captioned as above and numbered 916 and 917, respectively, in this court, these appeals on questions of law and fact are presented and disposed of together.  The facts in each case are somewhat different, the salient, undisputed portions of which we will set forth in the order of their presentation.

In case No. 916 six parties—Murbach, now deceased, Ingersoll, Roe, Cook, Crooks, and Parsch, now deceased—purchased from C. A. Glass a number of shares of stock of the Colson Company and the Colson Stores Company, and gave in payment therefor to Glass their promissory note in the sum of $14,700.  All of the stock was delievered to H. W. Ingersoll, who received it and still holds it in its converted form in

his capacity as trustee under a written agreement entered into between the purchasers. At the time of the purchase of the stock and the making of the agreement, H. W. Ingersoll was a director in and member of the finance committee of The Elyria Savings & Trust Company. Glass later sold the note to The Elyria Savings & Trust Company before the same became due.

From time to time renewal notes were given. Ingersoll as trustee accepted an exchange of the stocks for the original stock because of reorganization of the companies, and received dividends on the stock and applied the dividends on the indebtedness evidenced by the note.

In 1932, Ingersoll, as an individual, executed and delivered a mortgage to The Elyria Savings & Trust Company, a part of the conditions of which is as follows: "It being understood that this mortgage shall not be held as security for more than one-third of the amount of two certain notes signed by John Murbach, William T. Parsch, H. W. Ingersoll, and others. Certain collateral security now or hereafter held for the above-mentioned notes shall be exhausted before resort shall be had to the security hereby given, nor shall this security be foreclosed within two years from date hereof."

After liquidation and upon reorganization of The Elyria Savings & Trust Company, The Adwur Mortgage-Loan Company took over this note, along with other assets of the bank, and later, on May 13, 1935, took judgment on the note against all of the makers in the sum of $15,518.58. The makers Parsch and Murbach having died, the judgment was taken against their estates. With the exception of a small payment made on the judgment by Cook, the estate of John Murbach, deceased, paid the entire balance of the judgment in the sum of $16,368.91.

The agreement under which Glass transferred the stock to Ingersoll, Trustee, provides that "the trustee shall account for all dividends as the same may be paid * * *. It is understood that the liability on the note hereinbefore referred to given C. A. Glass, as between the parties hereto, shall be equal."

It will be noted that the only parties to this agreement were the purchasers themselves, and there is no reference therein in relation to collateral security. It is disputed that the Thomas N. Cook and William T. Parsch estates are wholly insolvent, but we think that the evidence is sufficient to establish the fact of insolvency, and these two estates will be so considered.

In case No. 917, five parties—Murbach, Ingersoll, Roe, Cook and Parsch—on September 1, 1927, borrowed from The Elyria Savings & Trust Company $33,000, for which they executed and delivered their promissory note to the bank. With this money stock was purchased in the Colson Company, and at the same time, although dated the 13th day of August, 1927, the purchasers, together with The Elyria Savings & Trust Company, Trustee, and The Elyria Savings & Trust Company, entered into an agreement providing for the holding of the stock referred to by The Elyria Savings & Trust Company, Trustee, and for the application of all dividends accruing on the stock to the note held by The Elyria Savings & Trust Company, and contains the following: "Whereas said parties of the first part desire to deposit said shares of stock so acquired and purchased by them with the party of the second part, to be held in escrow by said party of the second part as collateral security to said loan until the same, with interest, is fully paid and satisfied; * * * it is stipulated and agreed that, as between the parties of the first part signing the said note to said party of the third part, their liability, as between themselves, shall be equal. It is understood and agreed that when said note, or any renewal thereof, * * * shall have been fully paid, with interest, the stock so deposited with the second party under this agreement shall be returned to the respective parties, parties of the first part, in whose name said stock is issued."

The Adwur Mortgage-Loan Company came into possession of the note under the same circumstances as in case No. 916, and on October 1, 1935, took a judgment against all of the makers in

the sum of $36,699.48. Parsch and Murbach having died the judgment was taken against their estates. This judgment was paid in the following manner: Cook, $614.64; Ingersoll $1000; Parsch estate, $203.05; and the Murbach estate paid the entire balance in the sum of $35,725.35. Roe is without the jurisdiction of the court and the evidence is sufficient to establish the insolvency of the Cook and Parsch estates.

The suit in each case is for contribution and for subrogation to the rights of the loan company in the stock, which, under the facts recited above, gives rise to the following legal proposition: whether the Murbach estate is entitled to a judgment against Ingersoll in case No. 916 for one-fourth or one-sixth of the amount the estate was required to pay on the judgment, and in case No. 917 or one-half or one-fifth of the amount the estate was required to pay on the judgment. The further legal proposition involved is whether the Murbach estate is entitled to be subrogated to the rights of the mortgage company in the stock held by Ingersoll as trustee and held by the bank as trustee, and if in either case the judgment creditor had a right to sell and apply the proceeds of the stock on the loan.

On the question of contribution, the appellant admits that the general rule of law, forcing contribution to the one co-obligor who pays all of an obligation from each of the others for only an aliquot part calculated on the basis of the number of obligors, has been modified in equity to the extent of ignoring unavailable parties and proportioning the loss according to the number of those available. In these cases the Cook and Parsch estates are insolvent, and hence unavailable, and, in case No. 917, Roe is outside the jurisdiction of the court, and hence unavailable. Were it not for the contracts in question, the appellant has admitted that he would be liable for a one-fourth part contribution in case No. 916 and a one-half part contribution in case No. 917. Such admission is merely the recognition of the well-established rule.

13 C. J., Contribution, Sec. 10.
64 A. L. R. 224.
**9 O. Jur., Contribution, Sec. 23.**

The appellant is forced to rely entirely on the proposition that the measure of contribution may be varied by the contract of the parties.

**9 O. Jur., Contribution, Sec. 19.**

The trustee agreement in case No. 916 provides that: "It is understood that the liability on the note hereinbefore referred to given C. A. Glass, as between the parties hereto, shall be equal."

The trustee agreement in case No. 917 provides that: "It is stipulated and agreed that, as between the parties of the first part signing the said note to said party of the third part, their liability, as between themselves, shall be equal."

The appellant contends that the foregoing provisions limit the measure of contribution and modify the obligation to contribute in equity.

This express agreement between the parties, since each was to have an equal interest in the stock purchased and derived equal benefits from the money borrowed, represented by the notes in question, is nothing more or less than reducing to writing their actual liability fixed by law. The only possible construction that can be placed upon these parts of the agreements is that as between the parties the liability on the notes in question shall be equal; and under this construction the agreements merely amount to a recitation of the liability of the parties recognized at law, and in no wise modify, limit or vary such legal obligation.

It should be patent that under the language used nothing other than their legal liability on the notes in question was considered by the parties. Insolvency was not contemplated by any of them and the enforcement of the doctrine of contribution in equity was given no consideration.

Under some of the early decisions on this subject, relied upon by the appel-

lant and cited in 64 A. L. R. at page 227, in which we find a failure to distinguish clearly between rights under the doctrine of contribution at law and in equity, the rule is set forth that the equitable doctrine has no application "where there is an express agreement among the co-obligors to the contrary fixing the liability of each of them at a certain amount, without making any exception in the event of insolvency."

The provisions of the express agreements in the instant cases are not of such effect. The principle underlying the doctrine of contribution in equity is that the distribution of a common burden is made equally among those who are able to bear it. It is only under this principle that those who are unavailable because of insolvency or being outside the jurisdiction of the court are excluded in computing the portion of contribution. This principle is entirely different from the one at law where the doctrine must be worked out on the basis of an implied promise by each to contribute his distributive portion, or, as in the instant case, upon the express agreement to pay equally.

Bearing in mind the rule in equity and the principle underlying it, the case of Norris v Churchill, 20 Ind. App. 668, 51 N. E. 104, affords fully authority for determination in the instant cases that the agreements between the parties are not sufficient to change the well-settled rule of contribution in equity. Under this rule in case No. 916, Ingersoll is liable for one-fourth of the amount the Murbach estate was required to pay on the judgment, and in case No. 917, Ingersoll is liable for one-half of the amount the Murbach estate was required to pay on the judgment, giving consideration to the amounts heretofore paid by him.

In these two cases the Murbach estate is also seeking an order for the sale of the stock in question and the application of the proceeds thereof to the judgments paid by the estate. It is urged by the appellant that, under the well-established rules of law, the mortgage company holding the notes did not at any time have a lien on the stock, and that at no time was there a pledge thereof to it or its predecessors.

There might be some merit in this contention in regard to case No. 916 in event this court is limited to a determination of the second cause of action solely on the principles of law. The relief sought in that case falls entirely within the principles of equity, because of the failure of the law to afford a remedy.

While the failure of the parties to place title in and make delivery of the stock to the mortgage company or its predecessors in case No. 916, and to specify the exact conditions under which the stock could be sold, might afford many perplexing questions in a consideration of the case at law, it certainly does not preclude the court from its consideration of the existing facts and a determination of their effect in equity. Equity is no longer powerless to relieve where the law is inadequate. 68 L. R. A. 587.

"According to the apparent weight of modern authority, where one of several co-obligors in aequali jure is compelled to pay the entire debt, and, being entitled to contribution, seeks such relief in equity or in a court which may, under the code practice, apply equitable principles, not only collateral security held by the common creditor, but also the principal obligation itself and the creditor's rights and remedies by way of lien or otherwise may, if it appears that the achievement of substantial justice between the parties requires it, be treated as still subsisting for the benefit of the paying obligor, to the extent of the amount equitably due as contribution from other co-obligors, at least where an intention on the part of the paying debtor not to satisfy or discharge the principal obligation or security as against his co-obligors appears or may be presumed. * * *"
13 Am Jur., Contribution, Sec. 75.

In case No. 917 the intention of the parties was definitely expressed to the effect that the stock in question is held by the trustee as security for the

payment of the note. In case No. 916 the intention of the parties is not expressed, but the facts are that the dividends on the stock were applied to the payment of the obligation by the trustee rather than being apportioned among the purchasers. A transfer of the stock was never made to the purchasers, and the trustee at all times has held legal title and made assessments for payment of the note, and in all respects has treated the stock held by him in exactly the same manner as the stock held by the other trustee in case No. 917. During this period Ingersoll was a director in the bank which held the note, and his acts were such that as trustee he served the parties and the bank. The intention of the parties is further clarified by the trustee, Ingersoll, in the conditions of the mortgage given by him as an individual, which conditions we have set forth in a foregoing recitation of the facts.

It is clear that one of the purposes for holding the stock in trust was that it might be security for the payment of the note. Upon the payment by the Murbach estate of substantially the entire amount of the notes in each case, the trustees were not authorized to divide the stock between the various parties and deliver it to them. Prior to the payment made by the Murbach estate none of the stock had been paid for by any one. It is shocking to the senses of fairness and equity that any of the so-called purchasers of the stock can now be unjustly enriched by a delivery of it and a transfer of the legal title to them. While we find no cases covering exactly this same situation, we must conclude that in view of the clear intention of the parties to treat the stock in both cases as security for the notes, the achievement of substantial justice between the parties requires it to be so treated, and requires the sale thereof and an application of the proceeds to the judgments in question. Equity will not permit any legal deficiency that might have existed in the enforcement of the rights to the security by the creditor to interfere with the carrying out of the clear intentions of the parties and in effecting substantial justice between them.

The appellant, Ingersoll, has also attempted, before this court, to avail himself of the defense of insolvency.

Such a defense is not available to him since the plaintiff in this action in equity to compel contribution is entitled to a judgment against the defendant whether he be solvent or insolvent, so that, in event he should be insolvent and might become solvent in the future, the plaintiff could by virtue of the judgment require him to share the loss equally. Jewett v Maytham, 118 N. Y. Supp. 635. Ingersoll's present financial condition, whatever it may be, is the plaintiff's risk and not Ingersoll's defense.

Judgment for the appellees.

WASHBURN, PJ. & DOYLE, J., concur.