THE ANDWUR MORTGAGE-LOAN CO., APPELLEE, *v.*
MURBACH ET AL., EXRS., APPELLANTS, ET AL.

(No. 1075—Decided January 14, 1944.)

*Mr. R. H. Rice,* for appellee.
*Messrs. Vandemark & Vandemark,* for appellants.

DOYLE, J. This is an action for a declaratory judg-
ment, filed in the Court of Common Pleas of Lorain
county, in which, among other things, an order of the

court was sought to determine the effect of language contained in a real estate mortgage. The mortgage under inspection was given by one H. W. Ingersoll to the Elyria Savings & Trust Company as additional security for various promissory notes executed by the mortgagor to the bank. Some of the notes were signed and executed by Ingersoll individually; some were co-signed by various individuals; some of the notes had collateral security and some had none.

The controversial language in the instrument is as follows:

"* * * whereas the said H. W. Ingersoll has from time to time executed and delivered to The Elyria Savings & Trust Co. his certain notes aggregating more than thirty thousand dollars ($30,000), this mortgage is given as additional security for said notes, and all renewals thereof and new loans, not exceeding the total amount of thirty thousand dollars ($30,000), it being understood that this mortgage shall not be held as security for more than one-third of the amount of two certain notes signed by John Murbach, Wm. T. Parsch, H. W. Ingersoll, and others. Said collateral security now or hereafter held for the above-mentioned notes shall be exhausted before resort shall be had to the security hereby given; nor shall this security be foreclosed within two years from date hereof."

The various notes were reduced to judgment, and the executors of the estate of John W. Murbach, deceased, were compelled to pay almost in their entirety the notes upon which the decedent was a cosigner. Subsequently, the Murbach estate recovered judgment against H. W. Ingersoll for contribution.

It is the claim of the Murbach estate that, "in view of the fact that Ingersoll owes the Murbach estate more than $10,000, until such time as the Murbach estate

receives $10,000 from the assets described in the mortgage," the Andwur Mortgage-Loan Company (assignee of the notes, judgments and securities in controversy from the Elyria Savings & Trust Company) is entitled to no part of the mortgage or its proceeds.

The Andwur Mortgage-Loan Company, on the other hand, submits the following alternative quaere: Does the above-quoted language in the mortgage "A. Create any right, available to the Murbach estate, to require that any part of the proceeds of this mortgage be applied to the 'Murbach notes'?" or "B. Leave the holder of this mortgage (the Andwur Mortgage-Loan Co.) free to apply all such proceeds as it might see fit, subject only to the limitation that not more than one-third thereof could be applied on the 'Murbach notes'?"

The Court of Common Pleas determined that the mortgage did not "operate to confer on, or create in, John Murbach or the executors of his estate, any rights in said mortgage, or in funds derived from sale of all or any part of the real estate so mortgaged." Also, that the conditions of the mortgage created "a limitation on the right of the mortgagee to apply the funds derived from sale of all or any part of the real estate so mortgaged, rather than * * * any obligation to apply any part of said funds to the indebtedness evidenced by notes signed by John Murbach and others." The court therefore "ordered, adjudged and decreed that Ralph Murbach and the Elyria Savings & Trust Co., executors of the estate of John Murbach, deceased, have no right, title or interest in the mortgage * * * held by plaintiff or the proceeds from sale or sales of the real estate therein described."

From this judgment, appeal was perfected to this court on questions of law and fact.

It is not disputed that, on the date of the execution

of this mortgage for additional security, the mortgagor, Ingersoll, owed the bank individually approximately $53,000. He, with five other persons, including John Murbach, owed the bank approximately $29,000 on one note, and, with six other persons, including John Murbach, owed the bank approximately $13,000 on another one. The makers of the latter two notes agreed that their liability as between themselves should be equal, as evidenced by contemporaneously executed instruments.

The legal effect of this language was determined by this court in two previous actions between the Murbach estate and Ingersoll, which actions were heard and decided together (*Murbach* v. *Ingersoll*, 32 Ohio Law Abs., 410). A discussion of the principles of law therein set out is not necessary to here repeat.

Suffice it to say that, on the general subject, the weight of authority in this country, which has been generally followed in Ohio, is well stated in 13 American Jurisprudence, Contribution, Section 75, in the following language:

"* * * where one of several co-obligors in *aequali jure* is compelled to pay the entire debt, and, being entitled to contribution, seeks such relief in equity or in a court which may, under the code practice, apply equitable principles, not only collateral security held by the common creditor, but also the principal obligation itself and the creditor's rights and remedies by way of lien or otherwise may, if it appears that the achievement of substantial justice between the parties requires it, be treated as still subsisting for the benefit of the paying obligor, to the extent of the amount equitably due as contribution from other co-obligors, at least where an intention on the part of the paying debtor not to satisfy or discharge the principal obliga-

tion or security as against his co-obligors appears or may be presumed."

See, also, Restatement of the Law of Restitution, Section 81.

While this general principle would be applicable to the instant case if Ingersoll's only obligations to the bank or its assignee were the two so-called Murbach notes, other principles must be applied under circumstances as depicted in the record before us:

First, when Ingersoll gave additional collateral, it was his right to select the debt it was to secure, and, in the event of such selection, it would be the duty of the bank or its assignee to so apply it, in the absence of a special agreement to the contrary.

Second, in the absence of any such agreement or provision, the bank or its assignee could apply it to any one of the Ingersoll obligations. See *Gaston* v. *Barney*, 11 Ohio St., 506; *Advance Thresher Co.* v. *Hogan*, 74 Ohio St., 307, 78 N. E., 436.

Bearing in mind the foregoing respective rights, we must look to the language of the mortgage, because the record shows no other direction by Ingersoll except that which is therein contained.

The mortgage recited that it was to be used as additional security for all of Ingersoll's notes and new loans, but was not to be held "as security for more than one-third of the amount" of the two Murbach notes.

The primary index to the intention of Ingersoll or the primary guide for the interpretation of his language, is the literal and grammatical sense of the words employed. The words, taken apart from the preceding specific language, can only mean that he meant to provide for a restriction of power or a limitation of authority. In other words, he meant that the mortgage was given as additional security for his various obli-

gations, without direction as to its use, except that, if the bank or its assignee, in the event of default, determined to apply the proceeds to the Murbach notes, then and in that event it should not be used in payment for "more than one-third of the amount."

Examination has been made of the other claims and counterclaims of the litigating parties, and, in consideration of them, in view of the foregoing interpretation of the mortgage, we are of the opinion that the same judgment as was entered in the Court of Common Pleas should be entered in this court.

*Decree accordingly.*

Stevens, P. J., and Washburn, J., concur.